Case No. 19-3113

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

CHRISTIAN DELGADO-LOPEZ,
Defendant-Appellant.

_____

**On Appeal from the United States District Court
For the District of Kansas (Wichita)
The Honorable Judge John W. Broomes
Case No. 6:18-cr-10095-001**

_____

APPELLANT'S OPENING BRIEF AND REQUIRED ATTACHMENTS

_____

KANSAS FEDERAL PUBLIC DEFENDER
U.S. Courthouse
500 State Avenue, Ste. 201
Kansas City, KS 66101
Telephone: (913) 551-6712
Fax: (913) 551-6562
Email: kayla_gassmann@fd.org

MELODY BRANNON
Federal Public Defender

KAYLA GASSMANN
Appellate Attorney

Attorneys for Appellant
CHRISTIAN DELGADO-LOPEZ

_____

Oral Argument Requested

_____

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES.................................................................iii

PRIOR OR RELATED APPEALS ........................................................................v

JURISDICTIONAL STATEMENT .......................................................................1

ISSUE PRESENTED FOR REVIEW ....................................................................2

Whether the district court erred when it relied on improper factors and speculation to deny Mr. Delgado-Lopez's request for a minor-role reduction under USSG § 3B1.2.

STATEMENT OF THE CASE ...............................................................................3
    A. Procedural Background ........................................................................3
    B. The PSR Calculations ..........................................................................3
    C. The § 3B1.2 Issue .................................................................................4
        1. The PSR objection and responses........................................4
        2. The sentencing hearing discussion ......................................8
        3. The court's ruling and imposition of sentence ...................11

SUMMARY OF ARGUMENT ............................................................................13

ARGUMENT ...................................................................................................15

I. The district court erred when it relied on improper factors and speculation to deny Mr. Delgado-Lopez's request for a minor-role reduction under USSG § 3B1.2..............15
    A. Issue Raised and Ruled On....................................................................15
    B. Standard of Review. ..............................................................................16
    C. Legal Background....................................................................................17
    D. Discussion................................................................................................23
        1. The district court relied on improper factors and speculation to deny Mr. Delgado-Lopez's request for a minor-role reduction. ...............................................23
        2. The facts establish that Mr. Delgado-Lopez is entitled to a minor-role reduction...............................................................31
            a. The degree to which the defendant understood the scope and structure of the criminal activity ...................................................31
            b. The degree to which the defendant participated in planning or organizing the criminal activity .....................................................32
            c. The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority .........................................32
            d. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts .......33

e. The degree to which the defendant stood to benefit from the criminal activity ................................................................34

f. The sentence should be vacated and remanded ......................34

CONCLUSION ................................................................................35

ORAL ARGUMENT STATEMENT ....................................................35

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ........................36

CERTIFICATE OF COMPLIANCE WITH 10TH CIRCUIT RULE 25.5 ...............36

CERTIFICATE OF COMPLIANCE WITH 10TH CIRCUIT RULE 25.3 ...............36

CERTIFICATE OF SERVICE ............................................................37

JUDGMENT ................................................................ATTACHMENT A

DISTRICT COURT'S ORAL RULING ON THE MINOR-ROLE OBJECTION ..........ATTACHMENT B

# TABLE OF CASES AND AUTHORITIES

## Cases

*Mitchell v. United States*, 526 U.S. 314 (1999) .................................................28

*United States v. Bowen*, 437 F.3d 1009 (10th Cir. 2006) ...............................21

*United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010).................................22

*United States v. Carter*, 971 F.2d 597 (10th Cir. 1992) .................................19

*United States v. Collado*, 975 F.2d 985 (10th Cir. 1992) ...............................33

*United States v. Cruickshank*, 837 F.3d 1182 (11th Cir. 2016)........................30

*United States v. Diaz*, 884 F.3d 911 (9th Cir. 2018) ...............................29, 30, 31, 32, 34

*United States v. Diaz-Rios*, 706 F.3d 795 (7th Cir. 2013) ...........................29, 30

*United States v. England*, 555 F.3d 616 (7th Cir. 2009) .................................22

*United States v. Hill*, 563 F.3d 572 (7th Cir. 2009).......................................21

*United States v. Lacy*, 904 F.3d 889 (10th Cir. 2018)....................................22

*United States v. Leiskunas*, 656 F.3d 732 (7th Cir. 2011) ..............................33

*United States v. Llantada*, 815 F.3d 679 (10th Cir. 2016) .............................17

*United States v. Lopez-Avila*, 665 F.3d 1216 (10th Cir. 2011) ........................17

*United States v. Martinez*, 512 F.3d 1268 (10th Cir. 2008)..............................8

*United States v. Moore*, 666 F.3d 313 (4th Cir. 2012)....................................22

*United States v. Moreno*, 696 Fed. Appx. 886 (10th Cir. 2017)................18, 19, 28

*United States v. Ortiz*, 613 F.3d 550 (5th Cir. 2010)......................................22

*United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016) ......................21

*United States v. Rodriguez-Padilla*, 439 Fed. Appx. 754 (10th Cir. 2011) .......19

*United States v. Saenz,* 623 F.3d 461(7th Cir. 2010) ...................................... 26, 32

*United States v. Sanchez,* 725 F.3d 1243 (10th Cir. 2013) .......................... 17, 28

*United States v. Shonubi,* 998 F.2d 84 (2d Cir. 1993) ...................................... 22

*United States v. Singleton,* 545 F.3d 932 (11th Cir. 2008) .............................. 22

*United States v. Valois,* 915 F.3d 717 (11th Cir. 2019) ............................... 21, 33

*United States v. Van,* 541 Fed. Appx. 592 (6th Cir. 2013) .............................. 22

*United States v. Yurek,* 925 F.3d 423 (10th Cir. 2019) ............... 19, 21, 23, 27, 30, 31

## Statutes

18 U.S.C. § 3231 .................................................................................................. 1

18 U.S.C. § 3553(f) .............................................................................................. 3

18 U.S.C. § 3742 .................................................................................................. 1

21 U.S.C. § 841(a)(1) ....................................................................................... 1, 3

21 U.S.C. § 841(b)(1)(A) ................................................................................. 1, 3

28 U.S.C. § 1291 .................................................................................................. 1

## Other Authorities

Fed.R.App.P. 4(b)(1)(A)(i) .................................................................................. 1

Fed.R.Crim.P. 51(b) ........................................................................................... 16

USSG § 1B1.3 ............................................................................................... 20, 30

USSG § 2D1.1 ................................................................................................. 3, 33

USSG § 2D1.1(a)(5)(B)(iii) ............................................................................ 4, 34

USSG § 2D1.1(c)(1) ........................................................................................... 33

USSG § 3B1.2 ........................ 2, 4, 6, 8, 13, 15, 16, 17, 18, 19, 20, 21, 23, 27, 30, 31, 34

USSG § 3B1.2(b) .................................................................................4, 15, 17

USSG § 3B1.2, comment. (n.3(A)) ...................................... 18, 20, 21, 30

USSG § 3B1.2, comment. (n.3(C)) ...................................... 19, 20, 27, 30

USSG § 3B1.2, comment. (n.5) ...................................................................17

USSG § 3E1.1 ...............................................................................................3

USSG § 5C1.2 ...............................................................................................3

USSG Supp. to App. C, amend. 794 (Nov. 1, 2016) ..............18, 19, 20, 21, 27, 28, 30

## PRIOR OR RELATED APPEALS

None.

## JURISDICTIONAL STATEMENT

1.   The district court had jurisdiction under 18 U.S.C. § 3231. A federal grand jury indicted Christian Delgado-Lopez on one count of possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1) and (b)(1)(A). R1.10. Mr. Delgado-Lopez pleaded guilty to the indictment in May 2019. R1.68.[1]

2.   This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3.   Relevant dates under Federal Rule of Appellate Procedure 4(b)(1)(A)(i):

    a.   Judgment entered on: May 21, 2019. R1.68.

    b.   Notice of appeal filed on: June 3, 2019. R1.75.

4.   This appeal is from a final order that disposes of all the parties' claims.

---

[1] Our citations will take the following form: "R1.1," with "R1" indicating the volume of the record on appeal (in this case, either R1, R2, or R3, as there are three volumes on appeal), and ".1" indicating the page number of that volume of the record on appeal. This latter number is the number that appears in the bottom right corner of the record on appeal. For digital readers, this number also corresponds with the .pdf page number of the referenced volume. *See* 10th Cir. R. 28.1(A)(2).

## ISSUE PRESENTED FOR REVIEW

Whether the district court erred when it relied on improper factors and speculation to deny Mr. Delgado-Lopez's request for a minor-role reduction under USSG § 3B1.2.

## Statement Of The Case

### A. Procedural Background

On July 17, 2018, a federal grand jury in the District of Kansas indicted Mr. Delgado-Lopez for one count of possession with intent to distribute 13.6 kilograms of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). R1.10-11. That offense carries a ten-year mandatory-minimum prison sentence. 21 U.S.C. § 841(b)(1)(A).

Mr. Delgado-Lopez pleaded guilty to the indictment in February 2019. R1.12-19, 68. In the petition to enter a guilty plea, Mr. Delgado-Lopez admitted that during a traffic stop in Meade County, an officer searched his vehicle and found 13.6 kilograms of a mixture containing methamphetamine. R1.12. He admitted he was transporting the drugs from California to Kansas, where they would be further distributed. R1.12.

In May 2019, the district court sentenced Mr. Delgado-Lopez to 120 months' imprisonment and three years' supervised release. R1.68-74.

### B. The PSR Calculations

The presentence report (PSR) calculated a base offense level of 38 under USSG § 2D1.1, because the offense involved more than 4.5 kilograms of methamphetamine. R2.10. The PSR applied a three-level reduction for acceptance of responsibility under USSG § 3E1.1 and a two-level safety-valve reduction under USSG § 5C1.2. R2.10-11. The final offense level was 33. R2.11. The safety-valve reduction made the ten-year mandatory-minimum sentence inapplicable. R2.10-11; USSG § 5C1.2; 18 U.S.C. § 3553(f). Mr. Delgado-Lopez had no criminal history, placing him in criminal history category I. R2.11. With an offense level

of 33 and a criminal history category of I, the PSR calculated his advisory Guidelines range at 135 to 168 months' imprisonment. R2.15.

### C. The § 3B1.2 Issue

#### 1. The PSR objection and responses

The PSR did not recommend any Chapter Three role adjustment. Mr. Delgado-Lopez objected to the lack of a two-level minor-role reduction, and argued that under USSG § 3B1.2(b), he was entitled to the reduction. R2.20; R3.16-17. In his written objections to the PSR and again at the sentencing hearing, Mr. Delgado-Lopez extensively described his role in the offense, and set forth both a legal and factual argument in support of his request for a reduction. R2.20-27; R3.16-24, 42-45. Mr. Delgado-Lopez noted that if received a two-level minor-role reduction, his base offense level would additionally be reduced by four levels under § 2D1.1(a)(5)(B)(iii). R2.27. His resulting offense level would be 27, rather than 33, and the resulting guidelines range would be 70 to 87 months' imprisonment, a range some five years' lower than the one in the PSR. R2.27.

In support of his minor-role-reduction request, Mr. Delgado-Lopez provided the following facts about the offense. R2.20-22. He worked full-time as a bartender and server at an upscale retirement community in Dana Point, California. R2.20. The PSR confirmed that Ms. Delgado-Lopez had held that job since 2005. R2.15. To supplement his income, he worked weekends as a disc jockey (DJ). R2.20. Despite working two jobs, it was difficult for Mr. Delgado-Lopez to pay rent and bills and "put food on the table." R3.51. At one of his DJ gigs in Mexico, he was asked by an event promoter, Jaime, if he wanted to make some extra money, and Mr. Delgado-Lopez gave Jaime his contact information. R2.21. After Mr.

Delgado-Lopez returned to California, he received a telephone call from a member of a drug-trafficking organization, who already knew where he lived, and asked him to drive a shipment of drugs from California to Kansas City. R2.21. Mr. Delgado-Lopez agreed. R2.21. This led to his June 2018 stop for a traffic violation in the instant case, when a search of his vehicle revealed 13 kilograms of methamphetamine hidden in the spare tire. R3.6-8.

Mr. Delgado-Lopez made a total of four trips as a courier. R2.21. On each occasion, he received a phone call from a member of the trafficking organization one or two days before a trip. R2.21. A different person contacted him about each trip. R2.21. If Mr. Delgado-Lopez could do the trip, he rented a vehicle to drive from California to a destination city. R2.21. Prior to the departure, he left the rental vehicle on a side street near his apartment with the keys inside. R2.21. Members of the trafficking organization, unknown to Mr. Delgado-Lopez, would pick up the vehicle, load it with drugs, and return the vehicle to the street with the keys inside. R2.21. Mr. Delgado-Lopez understood that he was a drug courier, but he never knew the quantity of drugs in each load. R2.21.

After Mr. Delgado-Lopez left California, members of the trafficking organization tracked him by phone calls or text messages, which originated from various numbers inside the United States or Mexico. R2.21. Once Mr. Delgado-Lopez arrived at the destination, he would rent a hotel room and provide the address to that trip's contact for the trafficking organization. R2.21. A member of the trafficking organization would then come to the hotel, pick up the vehicle, unload the drugs in an unknown location, and return the vehicle to Mr. Delgado-Lopez. R2.21. When the trafficking organization returned the vehicle to the hotel, a man would pay Mr. Delgado-Lopez $1,000 in cash. R2.21.

The men who paid Mr. Delgado-Lopez were the only members of the trafficking organization that Mr. Delgado-Lopez ever saw in person. R2.21. No one from the trafficking organization ever gave Mr. Delgado-Lopez their name, other than his initial contact with Jaime in Mexico. R2.21. After he was paid, Mr. Delgado-Lopez would return the rental vehicle at the airport of the destination city and buy an airline ticket back to California. R2.22. While some of his other expenses were reimbursed, he was not reimbursed for the plane fare, which means that his profit for each trip was significantly less than $1,000. R2.22; R3.17-24.

In his written objections to the PSR, Mr. Delgado-Lopez described the facts and reviewed the factors listed in § 3B1.2, including: (i) the degree to which he understood the scope and structure of the criminal activity; (ii) the degree to which he participated in planning or organizing the criminal activity; (iii) the degree to which he exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of his participation in the commission of the criminal activity, including the acts he performed and the responsibility and discretion he had in performing those acts; and (v) the degree to which he stood to benefit from the criminal activity. R2.25-26.

He applied these factors to argue that he was substantially less culpable than the other participants in the offense. R2.25-27; R3.16-17. He argued that he was merely a courier who rented a vehicle, then followed other people's instructions to drive drugs to the city chosen by others, as he was directed to do. R2.25-27; R3.16-17. For this, he was paid $1,000, and he used a substantial portion of that money to pay his trip expenses. R2.25-27; R3.16-17. Other

people planned the offense, owned the drugs, loaded and unloaded the drugs, selected the distribution cities, and further distributed the drugs. R2.25-27; R3.16-17.

The government responded to Mr. Delgado-Lopez's minor-role objection. R2.27-31. The government first argued that Mr. Delgado-Lopez's statements about his role in the offense were not corroborated. R2.27-28. The government noted that the "Kansas Highway Patrol offered the defendant an opportunity to participate in a controlled delivery of the drugs—something he chose not to do. Controlled deliveries identify whether or not other co-conspirators exist, their relationship to the defendant, etc." R2.28. The government also noted that Mr. Delgado-Lopez initially denied involved in transporting the drugs during the stop, before admitting that the tire contained methamphetamine, and initially refused to give details about the drug trafficking organization. R2.28. The government then argued that the facts did not warrant a minor-role reduction for four reasons: (1) "the defendant attempted to deliver a significant quantity of methamphetamine to the Wichita area" with an unindicted passenger; (2) "the defendant declined to identify the source of the drugs and to make a controlled delivery to the alleged buyer"; (3) he "clearly understood the scope and structure of the criminal activity, exercising control and decision-making over the timing of his trip and course he would take;" and (4) he "drove a rental car with a passenger providing a cover or appearance of normalcy to the trip." R2.30. The government also argued that "the defendant's role was important to the distribution of the methamphetamine in the Wichita area" because "without the defendant's delivery of a significant quantity of drugs, there was nothing to distribute." R2.30.

The probation officer also responded to Mr. Delgado-Lopez's request for a minor-role reduction. R2.31-32. The probation officer noted that amendments USSG § 3B1.2 provide that a drug courier who is held accountable only for the drugs that he is personally responsible for "is not precluded" from a reduction, but emphasized that § 3B1.2 "does not require that such a defendant receive a reduction under §3B1.2, or suggest that such a defendant can receive a reduction based only on those facts; rather the amendment provides only that such a defendant is not precluded [from receiving the reduction]." R2.31 (citing *United States v. Martinez*, 512 F.3d 1268 (10th Cir. 2008)). The probation officer emphasized that Mr. Delgado-Lopez was the driver of a vehicle in which he was transporting over five kilograms of methamphetamine which had a purity level of 100%, and admitted to transporting methamphetamine three times prior to his arrest. R2.32. The probation officer noted that: "The U.S. Probation Office would concur that the defendant may not have been intimately aware of the drug quantities; planned or organized the transportation of the methamphetamine; or exercised any decision-making authority in the instant offense; however, he was fully aware that he was transporting a quantity of narcotics and had done so on at least four separate occasions." R2.32. The probation officer suggested the facts did not warrant a minor-role reduction because of the prior trips, "as well as the quantity and purity level of the methamphetamine. . . ." R2.32.

### 2. The sentencing hearing discussion

At the sentencing hearing, the district court denied Mr. Delgado-Lopez's request for a minor-role reduction. R3.30-31. The district court did not discuss the listed § 3B1.2 factors or compare Mr. Delgado-Lopez's role to the other participants in this offense. In its

discussion of the role-reduction objection, the court focused on three things: (1) the finances of Mr. Delgado-Lopez's involvement in the offense; (2) Mr. Delgado-Lopez's decision not to cooperate with law enforcement by completing a controlled buy; and (3) the amount of drugs involved in the offense. R3.27-33.

The district court first engaged in a series of questions about Mr. Delgado-Lopez's expenses and payment for the trip. R3.17-22. The court asked whether Mr. Delgado-Lopez had to pay for the gas, the hotel, and the return-trip airplane ticket, and calculated Mr. Delgado-Lopez's expenses for each trip as $730. R3.17-24. The court then suggested that he would make around $270 of profit for each trip. R3.23-24. The court asked Mr. Delgado-Lopez's hourly wage at his job, and Mr. Delgado-Lopez estimated that it was $14 per hour. R3.17-18. The court calculated that if Mr. Delgado-Lopez had worked for additional days at his full-time job instead of taking the courier trips, he would have made $224. R3.23-24.

The court concluded that "[i]f you had simply stayed at home and worked those two days, you'd make $224, just working at your current job. Even if you took a day job and made ten bucks an hour for those two days, you'd make 160 bucks, so somewhere—for somewhere around between 50 and a hundred dollars you were willing to face a life sentence over and over again." R3.24. The court stated "that doesn't make a lot of sense to me, which in my estimation creates some questions about the veracity of whether or not you are, in fact, a courier alone." R3.24. The court concluded that it was "utter foolishness to risk life imprisonment for a hundred dollars" and "[t]hat, coupled with your lack of cooperation with law enforcement, gives me some pause about whether or not I believe you are a courier and how minor a role in this case I think you actually held." R3.24.

Continuing its discussion of the minor-role request, the court reiterated that Mr. Delgado-Lopez declined to participate with law enforcement in a controlled buy. R3.32. The court explained "you know, I think, you know, this is just sort of an additional thought on this is, you know, people who—defendants who want to obtain these sorts of adjustments in their role, I think, sometimes they do step out and they take the risk of assisting with controlled deliveries or providing other information." R2.31. The court reasoned that "[e]ven if I assume he has no other information, it doesn't seem to me that he ought to get the same kind of break as those who do put themselves at some risk by assisting law enforcement with a controlled delivery or some other means to show that, 'Yeah, I'm sorry, I didn't want to get into this,' or 'I did but I wish I hadn't and I'm willing to do something to help try to make it right.'" R3.31-32.

The court also discussed the amount of drugs involved in the offense, and noted that Mr. Delgado-Lopez had been delivering a large amount of methamphetamine, which "indicates to me a measure of trust that the organization has likely placed in this defendant." R3.32-33.

Defense counsel responded to the court's analysis of the minor-role request. R3.42-43. Defense counsel argued that the district court made "assumptions" in its evaluation of the minor-role request, including that Mr. Delgado-Lopez was aware of the possibility of a life sentence before he committed in the offense, and "that a high school dropout and a chronic marijuana user actually went through the math and did the financial analysis that Your Honor did." R3.42. Defense counsel also objected to the court's reliance on Mr. Delgado-Lopez's decision not to cooperate to deny the minor-role reduction. Counsel argued that "there seems to be some conflation between Christian refusing to make a controlled delivery

and whether he qualifies for a minor role reduction and/or safety valve." R3.43. Counsel emphasized that "the minor role reduction looks at somebody's culpability within the organization. And the fact that that person refused to do a controlled delivery, I don't think, fits within 3[B]1.2, as I understand it." R3.43. Defense counsel also addressed the quantity of drugs, arguing that the court should not "conflate quantity with culpability as far as role in an organization." R3.44. Defense counsel argued that "it's pretty clear that couriers move drugs," but noted that nonetheless the Sentencing Commission had made minor-role adjustments available to couriers. R3.44; *see also* R2.22-25. Counsel argued that drug quantity simply "doesn't have that direct connection that the government's asking you to draw." R3.44.

The district court responded by stating that "[t]he way I'm interpreting that, for the record, is I'm evaluating—the only thing I have to go on to evaluate his role in the organization is his own testimony and conduct." R3.43. The district court stated, "[a]nd, you know, part of it is the economics. This don't make sense, which gives me some doubt about whether the thousand dollars is true, whether he got paid more. Maybe he had a piece of the action, so to speak." R3.43. The court then addressed the cooperation, stating "his unwillingness to do the controlled delivery plays more to that veracity component of do I believe his testimony about his role, not that I'm going to punish him or deny him a role reduction simply because he refused to cooperate more fully with the government." R3.43.

### 3.  The court's ruling and imposition of sentence

Ultimately, the district court denied Mr. Delgado-Lopez's request for a minor-role reduction. R3.30-33. The district court adopted the PSR's guidelines calculations and set Mr.

Delgado-Lopez's advisory guidelines range at 135 to 168 months' imprisonment (with no mandatory minimum). R3.38, 52-53. The government requested a 135-month term of imprisonment. R3.39-42. Defense counsel noted, "Your Honor, I think I've already made my objections on the record as to how we got here." R3.58. Defense counsel noted Mr. Delgado-Lopez's lack of criminal history and attempts to educate himself in pretrial detention. R3.47-50. Mr. Delgado-Lopez addressed the court, accepting responsibility for the offense, apologizing to his family and community, and explaining his plans to rehabilitate himself in prison by learning welding. R3.51-52.

The district court noted, "I see a measure of remorse, presenting rehabilitation to some degree, some hopefulness toward your future, some plans to try to take your life in a different direction once this is all over with. And that gives me some hope for you." R3.54. The district court varied downward and imposed a sentence of 120 months' imprisonment and three years' supervised release. R3.55, 59.

This timely appeal follows. R1.68, 75.

## SUMMARY OF ARGUMENT

The district court erred when it denied Mr. Delgado-Lopez a minor-role reduction. Although required to do so, the district court did not consider the listed § 3B1.2 factors or compare Mr. Delgado-Lopez's culpability to that of the other participants in this offense. Instead, the district court relied on two improper factors to deny the reduction: (1) the judge's own speculation that the trips did not make financial sense, which the court suggested meant that Mr. Delgado-Lopez had "a piece of the action"; and (2) Mr. Delgado-Lopez's decision not to complete a controlled delivery, which the court determined did not merit as much of a "break" as couriers in other cases. But a sentencing determination must not rest on speculation. There is nothing in the record to support the district court's conjecture that Mr. Delgado-Lopez played a larger role in the offense. Further, other couriers in other cases who cooperate with law enforcement are not the correct comparators. Mr. Delgado-Lopez must be compared to his co-participants in the offense. And relying on his decision not to cooperate infringes on his right to silence, which Mr. Delgado-Lopez retains at sentencing.

Under a proper § 3B1.2 relative-culpability analysis Mr. Delgado-Lopez qualified for a two-level minor-role reduction. Mr. Delgado-Lopez was a drug courier. He was paid only $1,000 per trip. He did not plan the offense, had no control over the type or quantity of drugs involved, had no control over the other participants who manufactured, transported, loaded, and further distributed the drugs, did not know the names of the other people involved in the offense, and had no proprietary interest in the drugs. Mr. Delgado-Lopez's

sentence must be vacated and remanded for resentencing for the district court to assess

those facts using the correct legal standard.

A<small>RGUMENT</small>

**I.  The district court erred when it relied on improper factors and speculation to deny Mr. Delgado-Lopez's request for a minor-role reduction under USSG § 3B1.2.**

### A.  Issue Raised and Ruled On

Below, Mr. Delgado-Lopez objected to the PSR's failure to include a two-level minor-role reduction under USSG § 3B1.2(b). R2.20. In his written objections to the PSR and again at the sentencing hearing, Mr. Delgado-Lopez extensively described his role in the offense, and set forth both a legal and factual argument in support of his request for a reduction. R2.20-27; R3.16-24, 42-45. The objection discussed recent amendments to § 3B1.2 and case law, applied each of the § 3B1.2 factors, and set forth why, under those factors, he was substantially less culpable than the other participants in the offense. R2.20-27. Mr. Delgado-Lopez argued that his role was a courier who rented a vehicle. Other people picked up the vehicle, loaded it with drugs, returned it, and instructed him where to travel to. R2.25-27; R3.16-17. At the destination city, other people unloaded the drugs and further distributed them. R2.25-27; R3.16-17.

The district court indicated it would overrule the objection, in part because of Mr. Delgado-Lopez's decision not to cooperate with law enforcement and in part because of the court's speculation about the finances of Mr. Delgado-Lopez's involvement in the offense. R3.17-24, 30-33. Mr. Delgado-Lopez protested the court's reliance on those factors. R4.42-43. Defense counsel argued that the district court made "assumptions" in its evaluation of the minor-role request, including "that a high school dropout and a chronic marijuana user actually went through the math and did the financial analysis that Your Honor did." R3.42.

15

Defense counsel also argued that "there seems to be some conflation between Christian refusing to make a controlled delivery and whether he qualifies for a minor role reduction and/or safety valve." R3.43. Defense counsel clarified that "the minor role reduction looks at somebody's culpability within the organization. And the fact that that person refused to do a controlled delivery, I don't think, fits within 3[B]1.2, as I understand it." R3.43.

In response, the court stated that its discussion about the "economics" was a factor in whether the court believed Mr. Delgado-Lopez's statements about his role, or whether "he got paid more. Maybe he had a piece of the action, so to speak." R3.43. The court also stated that "his unwillingness to do a controlled delivery plays more to that veracity component of do I believe his testimony about his role," and stated that it was not punishing Mr. Delgado-Lopez for refusing to cooperate more fully. R3.43.

The district court overruled the objection, and refused to grant a minor-role reduction. R3.33.

### B.  Standard of Review

"A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. Pro. 51(b).

In the district court, Mr. Delgado-Lopez requested a minor-role reduction, discussed the applicable § 3B1.2 factors and legal standards, and made a factual and legal argument for why he was entitled to the reduction. R2.20-27; R3.16-17. He also protested the district court's assumptions and speculative financial analysis and objected to the court's consideration of Mr. Delgado-Lopez's decision not to cooperate. R3.42-43. Mr. Delgado-

Lopez did not object again to the sentence after it was pronounced, but he was not required to do so to preserve the minor-role issue for appellate review. *See United States v. Lopez-Avila*, 665 F.3d 1216, 1217-18 (10th Cir. 2011). Where, as here, "[i]t is quite apparent from the record that the issue was properly raised prior to the sentencing hearing, the judge was familiar with the argument, and the argument was addressed by the judge," there is no need to make an additional objection to the sentence to preserve the issue. *See id.*

Accordingly, this Court must apply the standard of review for a preserved minor-role objection. *See id.* at 1218-19. This Court reviews the denial of the minor-role reduction for clear error, while reviewing the district court's legal conclusions de novo. *See United States v. Llantada*, 815 F.3d 679, 685 (10th Cir. 2016).

### C.  Legal Background

The mitigating-role guideline, USSG § 3B1.2, "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *Llantada*, 815 F.3d at 685. Defendants can receive four, three, or two-level reductions, depending on their role in the offense. *See* USSG § 3B1.2. Under USSG § 3B1.2(b), a defendant is entitled to a two-level minor-role reduction if he shows that he "was a minor participant in any criminal activity." *United States v. Sanchez*, 725 F.3d 1243, 1251 (10th Cir. 2013) (citing USSG § 3B1.2, comment. (n.5)).

The recent amendment history of § 3B1.2 is an important backdrop to the proper interpretation of that guideline. Recent amendments to § 3B1.2's commentary (or application notes) make plain that district courts have applied mitigating-role reductions less often than

they should, and in particular, have granted reductions to drug couriers less often than the Sentencing Commission intended.

Section 3B1.2 was most recently amended in 2015, after the Commission concluded that district courts had been applying mitigating-role reductions "inconsistently and more sparingly than the Commission intended." USSG Supp. to App. C, amend. 794 (Nov. 1, 2016); *see also United States v. Moreno*, 696 Fed. Appx. 886, 889-90 (10th Cir. 2017) (unpublished) (detailing effect of Amendment 794). The Amendment made several changes aimed at increasing sentencing courts' application of mitigating-role reductions. Several of these changes, detailed below, change or undermine this Court's prior precedent.

First, Amendment 794 clarified that, in making the minor-role comparison, a defendant's conduct and culpability should be compared only to actual participants in his offense—the other participants "in the criminal activity"—and not to other offenders who commit a similar type of crime. *See* USSG § 3B1.2, comment. (n.3(A)); USSG Supp. to App. C, amend. 794. The Commission intended this revision to clarify that the "average participant" encompasses "only those persons who actually participated in the criminal activity at issue in the defendant's case, so that the defendant's relative culpability is determined only by reference to his or her co-participants in the case at hand." USSG Supp. to App. C, amend. 794 (citing cases applying this analysis). The Commission rejected the positions of "[t]he First and Second Circuits" who had "concluded that the 'average participant' also includes typical offenders who commit similar crimes." USSG Supp. to App. C, amend. 794.

This Court has previously applied the same flawed rule as the First and Second Circuits, holding that the defendant's role should be compared with other actual participants as well

as "with a typical offender committing this type of offense." *United States v. Rodriguez-Padilla*, 439 Fed. Appx. 754, 758 (10th Cir. 2011) (unpublished). This Court has since acknowledged that Amendment 794 "eliminate[ed] one of the comparisons we looked to in determining whether a defendant was entitled to a mitigating role adjustment." *Moreno*, 696 Fed. Appx. at 890. A "typical offender" comparison is no longer valid under § 3B1.2. *See id.*

Next, Amendment 794 revised the § 3B1.2 commentary to stress that "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" of the mitigating-role question. USSG § 3B1.2, comment. (n.3(C)); USSG Supp. to App. C, amend. 794. The Commission rejected multiple circuit court decisions that affirmed the denial of a defendant's request for a mitigating-role reduction "solely because he or she was 'integral' or 'indispensable' to the commission of the offense." USSG Supp. to App. C, amend. 794.

The Commission expressly cited this Court's decision in *United States v. Carter*, 971 F.2d 597, 600 (10th Cir. 1992) ("because defendant was "indispensable to the completion of the criminal activity. . . to debate which one is less culpable than the others. . . is akin to the old argument over which leg of a three-legged stool is the most important leg"). After Amendment 794, a defendant's "indispensable" role, standing alone, is not a basis for denying a mitigating-role reduction. *See United States v. Yurek*, 925 F.3d 423, 446 (10th Cir. 2019).

Third, Amendment 794 made two changes to highlight that courts should grant a mitigating-role reduction more often to drug couriers. USSG Supp. to App. C, amend. 794. First, in the commentary, the Amendment replaced the negative "is not precluded from"

language with the affirmative "may receive," so that Note 3(A) to § 3B1.2 now provides: "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored **may receive** an adjustment under this guideline." USSG § 3B1.2, comment. (n.3(A)). The Commission made this change because the previous "double-negative tone ('not precluded') may have had the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." USSG Supp. to App. C, amend. 794. Second, the Commission chose to include a drug courier as an "example" of someone who "should be considered" for a reduction. USSG Supp. to App. C, amend. 794. The § 3B1.2 commentary now provides "as an example, that a defendant who does not have a propriety interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for a mitigating role adjustment." USSG § 3B1.2, comment. (n.3(C)).

Last, Amendment 794 provided a non-exhaustive list of factors for a sentencing court to consider when deciding whether to apply a reduction. USSG Supp. to App. C, amend. 794. This list of factors directs consideration of the degree to which the defendant: (1) understood the scope and structure of the criminal activity; (2) participated in planning or organizing the criminal activity; (3) exercised decision-making authority; (4) participated in the criminal acts, and the responsibility and discretion the defendant had in performing those acts; and (5) stood to benefit from the criminal activity. USSG § 3B1.2, comment. (n.3(C)). The Commission included these factors to "give the courts a common framework

for determining whether to apply a mitigating role adjustment (and, if so, the amount of the adjustment)" and to "help promote consistency." USSG Supp. to App. C, amend. 794.

And so, under § 3B1.2 in its current form, the minor-role inquiry "must focus on whether the defendant is substantially less culpable than the average participant in the criminal activity." *Yurek*, 925 F.3d at 445. In making this determination, the district court must "consider [Mr. Delgado-Lopez's] relative culpability" compared to other participants in the drug-trafficking scheme. *Id.* at 445-46. It is not enough for the district court to make findings about the defendant's individual role; the court must also compare the defendant's culpability to that of the other participants. *United States v. Hill*, 563 F.3d 572, 579 (7th Cir. 2009); § 3B1.2, comment. (n.3(A)). The minor-role comparison must be made on the basis of a defendant's entire relevant conduct. *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019).

Where the sentencing court does not consider relative culpability, but instead denies a reduction based on improper factors or treats improper factors as determinative, the case must be remanded for resentencing under the correct legal standard. *See Yurek*, 925 F.3d at 446-47; *Hill*, 563 F.3d at 579-80; *see also United States v. Bowen*, 437 F.3d 1009, 1019 (10th Cir. 2006) ("[W]hen it is apparent from the court's optional discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard."); *United States v. Quintero-Leyva*, 823 F.3d 519, 523-24 (9th Cir. 2016) (remanding for resentencing with instructions for district court to consider all of the § 3B1.2 factors).

Speculation by the district court must not play a role in sentencing. "Sentencing judges necessarily have discretion to draw conclusions about the testimony given and evidence introduced at sentencing, but due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (quoting *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009)); *see also United States v. Lacy*, 904 F.3d 889, 900 (10th Cir. 2018) ("an inference must be more than speculation to be reasonable"). A sentencing finding "must be based on evidence before the court, and thus in the record, and not on speculation or hypothesis." *United States v. Moore*, 666 F.3d 313, 322 (4th Cir. 2012); *see also United States v. Ortiz*, 613 F.3d 550, 558–59 (5th Cir. 2010) (where "[o]nly speculation" based on proximity connected drugs to the defendant, they could not be attributed to him as relevant conduct). Similarly, a factfinding that relies on speculation or conjecture is clearly erroneous. *See, e.g., United States v. Singleton*, 545 F.3d 932, 935 (11th Cir. 2008) (district court's drug-quantity determination "was speculative and, thus, clearly erroneous"); *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993) (because district court's factual findings on drug quantity were "necessarily predicated on surmise and conjecture . . . they were clearly erroneous").

When the district court relies even in part on speculation to select a sentence, a reviewing court should vacate and remand for reconsideration. *See Ortiz*, 613 F.3d at 559 (vacating sentence where speculative drug-quantity finding increased the sentencing range); *United States v. Van*, 541 Fed. Appx. 592, 598 (6th Cir. 2013) (unpublished) (remanding when district court based sentence on speculation that the defendant was involved in an undisclosed scheme).

### D. Discussion

#### 1. The district court relied on improper factors and speculation to deny Mr. Delgado-Lopez's request for a minor-role reduction.

Under § 3B1.2, the district court must "consider [Mr. Delgado-Lopez's] relative culpability" compared to other participants in the drug-trafficking scheme. *Yurek*, 925 F.3d at 445-46. But here, the district court did not conduct a relative-culpability analysis between Mr. Delgado-Lopez and the other participants in the offense. *See* R3.17-24, 30-33. Despite Mr. Delgado-Lopez's extensive discussion of the § 3B1.2 factors in his PSR objection, R2.20-27, the court did not mention any of the § 3B1.2 factors to assess Mr. Delgado-Lopez's role. *See* R3.17-24, 30-33. The court did not discuss the other participants in the offense, like Jaime, who initially recruited Mr. Delgado-Lopez, or the traffickers who planned the offense, owned the drugs, gave instructions to Mr. Delgado-Lopez, loaded and unloaded the drugs in California and the destination cities, monitored Mr. Delgado-Lopez during his travel, delivered payment to Mr. Delgado-Lopez, and further distributed the drugs. *See* R3.17-24, 30-33. The court utterly failed to conduct the required relative-culpability analysis required by § 3B1.2. *See Yurek*, 925 F.3d at 445-46.

And the analysis the district court did conduct was flawed. The court speculated and considered improper factors to deny Mr. Delgado-Lopez's minor-role request. The only factors mentioned by the court in its minor-role discussion were: (1) its own speculative assessment of the financial wisdom of the offense; (2) Mr. Delgado-Lopez's decision not to participate in a controlled delivery, while other couriers who do cooperate deserve more of a "break"; and (3) the amount of methamphetamine involved in the offense. R3.17-24, 30-33.

Most of these rationales, however, are entirely speculative, are not supported by any record evidence, and are improper factors for the court to use to deny the mitigating role reduction.

Much of the district court's minor-role analysis was focused on its own speculation about the financial wisdom of the offense and its suggestion that Mr. Delgado-Lopez might have been more than a courier. R3.17-24. Instead of assessing Mr. Delgado-Lopez's culpability compared to other participants, the district court inquired extensively into the financial details of Mr. Delgado-Lopez's arrangements with the trafficking organization. R3.17-24. The court clarified what expenses Mr. Delgado-Lopez paid for himself and what expenses were reimbursed. R3.17-24. The court asked about Mr. Delgado-Lopez's full-time job and wages, the length of the trip, what vehicle he rented and what it cost, fuel cost, hotel room cost, return flight cost, whether he paid a coconspirator, who paid for each expense and what was reimbursed, and whether Mr. Delgado-Lopez took time off from work. R3.17-24. The court then calculated the expenses for the trip, concluding, "[t]hat gives you $730 of expenses, gives you a net profit from this adventure of $270." R3.23-24. The court then calculated what it believed Mr. Delgado-Lopez would have made at his $14-per-hour regular job, or another hypothetical job. R3.24.

The court speculated that "[i]f you had simply stayed at home and worked those two days, you'd make $224, just working at your current job. Even if you took a day job and made ten bucks an hour for those two days, you'd make 160 bucks, so somewhere—for somewhere around between 50 and a hundred dollars you were willing to face a life sentence over and over again." R3.24. Because that financial analysis did not make sense to the district court, he stated that it "creates some questions about the veracity of whether or not you are,

in fact, a courier alone." R3.24. The court stuck with the same theme, noting "I mean, this is utter foolishness to risk life imprisonment for a hundred dollars. You could have stayed home and worked and made most of this money and not faced jail time if you wanted to. That, coupled with your lack of cooperation with law enforcement, gives me some pause about whether or not I believe you are a courier and how minor a role in this case I think you actually held." R3.24.

There was nothing about the facts of the offense or Mr. Delgado-Lopez's circumstances that indicated he played a larger role than a courier, that he committed any additional time to drug trafficking, or that he made any additional money from trafficking. To the contrary: since 2005 he had been working a full-time job at a retirement community, a detail confirmed by the PSR. R2.15. In fact, the probation office agreed that Mr. Delgado-Lopez "may not have been intimately aware of the drug quantities; planned or organized the transportation of the methamphetamine; or exercised any decision-making authority in the instant offense." R2.32. And Mr. Delgado-Lopez did not hide the extent of his involvement, but admitted to four total trips. R3.17.

The court's contrary conjecture is entirely speculative and rests on many unsupported assumptions about Mr. Delgado-Lopez's life and circumstances. This discussion assumes that he could easily work more hours at his already full-time job, or that he could easily find another "day job" at $10 an hour with a schedule flexible enough to fit around his full-time job. And most of all, it assumes that Mr. Delgado-Lopez, who dropped out of high school after the tenth grade with a .533 grade-point average, R2.14, who smokes marijuana three times a day, R2.14, and who was experiencing financial difficulties, R3.51, conducted the

25

same methodical financial analysis as the district court. There is no record evidence supporting the court's speculation.

*United States v. Saenz*, 623 F.3d 461(7th Cir. 2010) is illustrative. In *Saenz*, the district court "twice stated that it was clear that Saenz was far more than a courier" and concluded that "[t]he evidence established a much wider participation by Mr. Saenz in this ongoing conspiracy," and denied a role reduction. *Id.* at 467. "But," the Seventh Circuit said, "there is no evidence in the record that Saenz was involved in this conspiracy on more than one solitary occasion, or that his involvement was anything other than merely transporting money." *Id.* The question in the case, the court said, "is whether this one-time courier is less blameworthy than the average defendants in this conspiracy." *Id.* at 468. But the "district court did not make this assessment" because "its premise was that Saenz was more than a courier, a statement for which we find no record support." *Id.* Because the district court's reason for denying the reduction was not supported by the record, the court remanded for reconsideration. *Id.* at 468-69.

In this case, the other major theme of the district court's minor-role discussion was Mr. Delgado-Lopez's decision not to cooperate with law enforcement by completing a controlled buy. R3.24, 30-32. The court repeatedly referenced Mr. Delgado-Lopez's decision not to cooperate in its reasons for denying a minor-role reduction. R3.24, 30-32. The very first reason the court gave for not applying a reduction was: "This is a fellow who at first denied his involvement, declined to do a controlled delivery to substantiate his assertion." R3.31. The court then asked whether Mr. Delgado-Lopez "offered up any information other than identifying . . . Jaime. . . the fellow that contacted him at the disc jockey job and sort of got

the ball rolling on his involvement in these shipments?" R3.31. The court subsequently noted that "defendants who want to obtain these sorts of adjustments in their role, I think, sometimes they do step out and they take the risk of assisting with controlled deliveries or providing other information." R3.31. The court stated that even if it assumed Mr. Delgado-Lopez had no information to give, "it doesn't seem to me that he ought to get the same kind of break as those who do put themselves at some risk by assisting law enforcement with a controlled delivery" to show that they were sorry for their involvement. R3.31-32. The court's discussion clearly shows that the court was considering Mr. Delgado-Lopez's decision not to cooperate in its minor-role decision.

This consideration was improper for at least three reasons: (1) cooperation is not a factor in the minor-role relative-culpability analysis; (2) the district court improperly compared Mr. Delgado-Lopez to other drug couriers in other cases, instead of to the other participants in his offense; and (3) the court's reliance on the decision not to cooperate infringes on Mr. Delgado-Lopez's right to silence.

The touchstone of the minor-role determination is relative culpability. *See Yurek*, 925 F.3d at 445-46. Section 3B1.2 sets forth factors to guide the court's culpability analysis. *See* USSG § 3B1.2, comment. (n.3(C)); USSG Supp. to App. C, amend. 794. The district court's amorphous opinion about whether or not Mr. Delgado-Lopez deserves a "break" cannot substitute for application of the mitigating-role factors and the relative-culpability analysis of Mr. Delgado-Lopez and the other participants under § 3B1.2. *See Yurek*, 925 F.3d at 446 (finding error where the district court "did not consider Mrs. Yurek's culpability relative to other participants in the scheme").

Further, in its discussion of cooperation, the court improperly compared Mr. Delgado-Lopez's role to that of a hypothetical drug courier in another case who might be entitled to the "break" of a role reduction. This erroneous comparison is precisely what the Commission targeted with Amendment 794. That Amendment made clear that Mr. Delgado-Lopez's culpability must be judged in comparison to the other participants in this offense—Jaime, and the other members of the trafficking organization—and not to other drug couriers in other cases. *Moreno*, 696 Fed. Appx. at 890; USSG Supp. to App. C, amend. 794. It was incorrect for the court to base any part of the minor-role determination on the culpability of hypothetical drug couriers in other cases who decide to cooperate more fully and therefore deserve more of a "break." *Moreno*, 696 Fed. Appx. at 890; USSG Supp. to App. C, amend. 794.

The court's reliance on Mr. Delgado-Lopez's decision not to complete a controlled delivery is also improper because of Mr. Delgado-Lopez's right to silence. Although the defendant bears the burden of establishing his entitlement to a mitigating-role adjustment, *see e.g., Sanchez*, 725 F.3d at 1251, there is no requirement in § 3B1.2 that the defendant cooperate with the government. Mr. Delgado-Lopez, of course, retains his right to remain silent as to the circumstances and details of the crime in the sentencing phase of a criminal proceeding. *See Mitchell v. United States*, 526 U.S. 314, 327-28 (1999). In *Mitchell*, the Supreme Court held that a court may not draw an adverse inference from a defendant's silence "in determining the facts of the offense" at sentencing, because to do so "impose[s] an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Mitchell*, 526 U.S. at 330. It was improper for the court to rely on Mr.

28

Delgado-Lopez's decision not to cooperate with law enforcement as a basis to deny a minor-role reduction.

The court's attempts to clean up its errors only compounded them. Defense counsel objected that it was inappropriate to consider the refusal to make a controlled delivery as a reason to deny a minor-role reduction and suggested the court's speculation about Mr. Delgado-Lopez's finances was unsupported. R3.42-43. In response, the court engaged in yet more speculation. The court stated that it was "not saying that a refusal to cooperate is a direct factor on the minor participant" but then speculated that "his unwillingness to do the controlled delivery" may indicate that "[m]aybe he had a piece of the action." R2.43. As set forth above, the court's suggestion that Mr. Delgado-Lopez "had a piece of the action" is belied by the record evidence and is entirely speculative. In any event, the district court's conflicting statements—first, it said Mr. Delgado-Lopez should not get the same "break" as those who cooperate, R3.31-32; later it claimed the cooperation was about "veracity", R3.43—make it impossible to determine what standard the court applied or how the court considered the factors it mentioned. In such a situation, remand is required. *See United States v. Diaz*, 884 F.3d 911, 918 (9th Cir. 2018) (remanding where court's analysis was unclear and appellate court could not "determine whether the district court would have granted a minor-role adjustment had these factors been properly applied"); *United States v. Diaz-Rios*, 706 F.3d 795, 799 (7th Cir. 2013) (remanding for resentencing where district court properly considered drug weight but Court of Appeals could not "tell whether the district court compared Diaz-Rios's role in the offense against those of average participants, as it should have").

The court's improper speculation and reliance on erroneous factors leaves the amount of methamphetamine as the only potentially proper factor the court discussed for denying the minor-role reduction. R3.32-33. But standing alone, drug quantity is not a proper basis for the denial of a mitigating-role reduction. *See United States v. Cruickshank*, 837 F.3d 1182, 1194-95 (11th Cir. 2016). And the Commission has rejected the district court's drug-weight-equals-culpability reasoning by repeatedly making clear that courts should be granting role reductions more frequently to drug couriers. *See* USSG Supp. to App. C, amend. 794. Couriers transport drugs. Yet, post-Amendment 794, Note 3(A) to § 3B1.2 provides that "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." USSG § 3B1.2, comment. (n.3(A)). The Commission also chose to include a drug courier as an "example" of someone who "should be considered" for a minor-role reduction. USSG Supp. to App. C, amend. 794; USSG § 3B1.2, comment. (n.3(C)). And where the rest of the district court's minor-role analysis is riddled with improper considerations and speculation, its mention of one factor that could be permissible cannot substitute for a correct § 3B1.2 analysis. *See Diaz*, 884 F.3d at 918; *Diaz-Rios*, 706 F.3d at 799.

Review of the record establishes that the court did not conduct a relative-culpability analysis or apply the § 3B1.2 factors. "By failing to consider [Mr. Delgado-Lopez's] relative culpability, the district court applied the wrong test when denying a mitigating-role adjustment." *Yurek*, 925 F.3d at 446. Instead, the court focused on unsupported speculation

and improper factors to deny the minor-role request. Because the district court did not conduct a proper comparison, this Court should vacate the sentence and remand for resentencing. *See id.*

### 2. The facts establish that Mr. Delgado-Lopez is entitled to a minor-role reduction.

As set forth above, the district court did not apply the correct legal standard under § 3B1.2. As set forth below, a correct analysis under the § 3B1.2 factors shows that there are sufficient facts to establish that Mr. Delgado-Lopez is substantially less culpable than the other participants in the offense. Thus, the sentence should be vacated and remanded for the district court to consider those facts under the correct legal standard. *See Yurek*, 925 F.3d at 446.

### a. The degree to which the defendant understood the scope and structure of the criminal activity

Mr. Delgado-Lopez agreed to drive unknown quantities of drugs from California to the Midwest. R2.21, 26. For this conduct, he was paid $1,000—well below the value of the drugs, which the government estimated to be $100 per gram (for 13.6 kilograms of methamphetamine). R2.21, 26; R3.32-33. He knew traffickers were located both in California and the destination cities, but did not know their identities or other details of the organization. R2.21-22, 26. That Mr. Delgado-Lopez did not know the other members of the trafficking organization "cuts in his favor because it tends to show that he had minimal knowledge regarding the scope and structure of the criminal operation." *Diaz*, 884 F.3d at 917. Mr. Delgado-Lopez did not know what happened to the drugs after they were unloaded

in the destination city. R2.21, 26. He did not move any drug proceeds back to California.

R2.21-22, 26.

### b. The degree to which the defendant participated in planning or organizing the criminal activity

Mr. Delgado-Lopez did not organize or plan the offense, or influence those who did.

The probation office agreed that Mr. Delgado-Lopez did not plan or organize the

transportation of the methamphetamine. R2.32. The probation office also concurred that

Mr. Delgado-Lopez was not aware of the drug quantity. R2.32. The fact that a courier does

not "know the type or quantity of the drugs hidden in his vehicle" suggests that "he did not

play a significant role in planning or organizing." *Diaz*, 884 F.3d at 917.

### c. The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority

Mr. Delgado-Lopez had no decision-making authority and did not influence those who

did. The probation officer again agreed that he did not exercise decision-making authority.

R2.32. Mr. Delgado-Lopez rented the vehicle but had no authority over any other details of

the offense. R2.21-22, 27. "Perhaps he could have chosen the route he wished to take as he

left [California], but he had no decision-making authority beyond that." *Saenz*, 623 F.3d at

468. When each trip occurred, other members of the trafficking organization picked up the

vehicle, loaded it outside of Mr. Delgado-Lopez's presence, chose the destination city, chose

the date of the trip, checked on Mr. Delgado-Lopez's progress with him during the trip,

directed him where to go, unloaded the vehicle once he arrived, and decided how the drugs

were further distributed. R2.21-22, 27.

### d. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts

Mr. Delgado-Lopez had no discretion but followed the instructions of others. R2.21-22, 27. His participation in the offense was limited to renting a vehicle, waiting for other participants to load the drugs, driving the vehicle to the destination city selected by others, and waiting while the drugs were unloaded by others. R2.21-22, 27. Mr. Delgado-Lopez did not even bring cash back to California during the return trip. R2.22, 27. He would turn in the rental vehicle at the airport, purchase a ticket back to California, and fly home. R2.22, 27. He had no role in deciding the type or quantity of drugs to be delivered, or in how the drugs were further distributed. R2.21-22, 27. Although the probation office made much of Mr. Delgado-Lopez's multiple prior trips, R2.32, "a criminal participant that commits a minor act is not necessarily precluded from minor role consideration simply because the minor act is repeated." *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011).

And, as set forth above, the minor-role comparison must be made on the basis of a defendant's entire relevant conduct. *Valois*, 915 F.3d at 732. In drug-courier cases like this one, aggravating facts like drug type and quantity are attributed to the courier as relevant conduct and are significant drivers of the sentence, *see United States v. Collado*, 975 F.2d 985, 995 (10th Cir. 1992), even though such acts arise from the conduct and decisions of dealers. For instance, here Mr. Delgado-Lopez's base offense level under § 2D1.1 begins at 38, the highest possible point, because the drugs were high-purity methamphetamine. R2.7 ¶ 30; USSG § 2D1.1(c)(1). But Mr. Delgado-Lopez had no role in deciding the type, quantity or quality of drugs to be transported, and he was paid only a flat fee that constituted a fraction

of the drugs' value. R2.21, 27; R3.32-33. Even the probation office agreed that Mr. Delgado-Lopez was not aware of the drug quantity. R2.32.

### e. The degree to which the defendant stood to benefit from the criminal activity

Mr. Delgado-Lopez agreed to act as a courier and transport unknown quantities of drugs for the trafficking organization. R2.21-22, 27. While Mr. Delgado-Lopez received $1,000 per trip, that amount was a fraction of the value of the drugs and, because of his expenses, his actual profit was significantly less. R2.21-22, 27; R3.32-33. He otherwise did not benefit or profit from acting as a courier. R2.21-22, 27. Mr. Delgado-Lopez received "a set fee of $1,000 and had no ownership interest or other stake in the outcome of the trafficking operation," which "weighs in favor of granting the adjustment." *Diaz*, 884 F.3d at 917-18. Other participants who owned or manufactured the drugs and who further distributed them stood to benefit far more than Mr. Delgado-Lopez. R2.21-22, 27.

### f. The sentence should be vacated and remanded

A correct analysis that actually compares Mr. Delgado-Lopez's culpability to that of the other participants under the § 3B1.2 framework shows that there are sufficient facts to support a minor-role reduction. The court did not properly assess those facts because it never applied the § 3B1.2 standards to the minor-role request.

The court's error makes a huge difference in this case. If Mr. Delgado-Lopez receives a two-level minor-role reduction, his base offense level is additionally reduced by four levels under § 2D1.1(a)(5)(B)(iii). R3.29-30. His resulting offense level would be 27, rather than 33, and the resulting guidelines range would be 70 to 87 months, down from the 135-to-168-month range used by the district court. Mr. Delgado-Lopez received the safety-valve

reduction, so the 10-year mandatory minimum does not bind the district court. The district court gave no indication that it would have imposed an above-guidelines sentence. To the contrary, the district court discussed Mr. Delgado-Lopez's capacity for rehabilitation and varied downward. R3.54-55, 59. This sentence must be vacated and remanded for the district court to conduct a correct minor-role analysis.

## CONCLUSION

For the reasons stated above, this Court should vacate the judgment and remand for resentencing.

## ORAL ARGUMENT STATEMENT

We request oral argument. Oral discussion of the facts, the amended mitigating-role guideline, and the district court's errors would aid this Court.

Respectfully submitted,

MELODY BRANNON
Federal Public Defender

By: s/ Kayla Gassmann
KAYLA GASSMANN
Appellate Attorney
Kansas Federal Public Defender
U.S. Courthouse
500 State Avenue, Ste. 201
(913) 551-6712
kayla_gassmann@fd.org

Attorneys for Defendant-Appellant
CHRISTIAN DELGADO-LOPEZ

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

The undersigned certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(5) & (7)(B) in that it contains 9,199 words in a proportionally spaced typeface (13-point Garamond; as allowed by 10th Circuit Rule 32(a)), as shown by Microsoft Word 2016, which was used to prepare this brief.

s/ Kayla Gassmann
KAYLA GASSMANN
Appellate Attorney

Dated: October 25, 2019

## CERTIFICATE OF COMPLIANCE WITH 10TH CIRCUIT RULE 25.5

The undersigned certifies that this brief complies with the applicable privacy and redaction requirements of 10th Circuit Rule 25.5 and the rules cited therein.

s/ Kayla Gassmann
KAYLA GASSMANN
Appellate Attorney

Dated: October 25, 2019

## CERTIFICATE OF COMPLIANCE WITH 10TH CIRCUIT RULE 25.3

The undersigned certifies that the hard copies of this brief submitted to the Court are exact copies of the version submitted electronically, and that the electronic submission was scanned for viruses with the most recent version of Symantec Endpoint Protection (Live Update on October 25, 2019) and is free of viruses.

s/ Kayla Gassmann
KAYLA GASSMANN
Appellate Attorney

Dated: October 25, 2019

### CERTIFICATE OF SERVICE

Undersigned counsel certifies that on October 25, 2019, she electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth

Circuit by using the CM/ECF system. Because opposing counsel Assistant United States

Attorney James A. Brown is a registered CM/ECF user, he will also be served by the

CM/ECF system. 10th Cir. R. 31.5. Pursuant to 10th Circuit Rule 31.5, 7 hard copies will be

mailed to the Clerk of the Court at:

> Ms. Elisabeth Shumaker, Clerk of the Court
>     Tenth Circuit Court of Appeals
>     1823 Stout Street
>     Denver, CO 80257

A copy of the brief will also be mailed to Mr. Delgado-Lopez.

> s/ Kayla Gassmann
> KAYLA GASSMANN
> Appellate Attorney
> Kansas Federal Public Defender
> 500 State Avenue, Suite 201
> Kansas City, KS 66101
> 913-551-6712
> kayla_gassmann@fd.org

# United States District Court

## District of Kansas

UNITED STATES OF AMERICA

v.

Christian Delgado-Lopez

**JUDGMENT IN A CRIMINAL CASE**

Case Number:   6:18CR10095 - 001

USM Number:  29288-031

Defendant's Attorney:   David J. Freund

## THE DEFENDANT:

☒     pleaded guilty to count:  1 of the Indictment.

☐     pleaded nolo contendere to count(s) ___ which was accepted by the court.

☐     was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine, a Class A Felony | 06/05/2018 | 1 |

The defendant is sentenced as provided in pages 1 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐     The defendant has been found not guilty on count(s) ___.

☐     Count(s) ___ is dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

05/20/2019

Date of Imposition of Judgment

s/ John W. Broomes

Signature of Judge

Honorable John W. Broomes, U.S. District Judge

Name & Title of Judge

May 21, 2019

Date

AO 245B    (Rev. 02/18 - D/KS 02/18) Judgment in a Criminal Case

Judgment – Page **2** of 7

DEFENDANT:      Christian Delgado-Lopez
CASE NUMBER:   6:18CR10095 - 001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of
__120 months__ .

☒   The Court makes the following recommendations to the Bureau of Prisons:
At the request of defense counsel, the Court recommends the defendant be designated to FCI El Reno where he may be considered for participation in vocational training, preferably the welding program, and where he may be considered for placement in the RDAP or other substance abuse programs as deemed eligible by the Bureau of Prisons.

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district.

☐ at ___ on ___.

☐ as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before ___ on ___.

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.


_____
                                                          UNITED STATES MARSHAL


                                    By _____
                                                          Deputy U.S.  Marshal

AO 245B    (Rev. 02/18 - D/KS 02/18) Judgment in a Criminal Case

DEFENDANT:     Christian Delgado-Lopez
CASE NUMBER:   6:18CR10095 - 001

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of <u>3 years</u> .

# MANDATORY CONDITIONS

1.   You must not commit another federal, state, or local crime.

2.   You must not unlawfully possess a controlled substance.

3.   You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended based on the court's determination that you pose a low risk of future substance abuse.  *(Check if applicable.)*

4.   ☐   You must make restitution in accordance with <u>18 U.S.C. §§ 3663</u> and <u>3663A</u> or any other statute authorizing a sentence of restitution. *(Check if applicable.)*

5.   ☒   You must cooperate in the collection of DNA as directed by the probation officer. *(Check if applicable.)*

6.   ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (<u>34 U.S.C. § 20901</u>, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(Check if applicable.)*

7.   ☐   You must participate in an approved program for domestic violence. *(Check if applicable.)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B    (Rev. 02/18 - D/KS 02/18) Judgment in a Criminal Case

DEFENDANT:    Christian Delgado-Lopez
CASE NUMBER:    6:18CR10095 - 001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.  You must answer truthfully the questions asked by your probation officer.

5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or Tasers).

11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at the www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245B   (Rev. 02/18 - D/KS 02/18) Judgment in a Criminal Case

DEFENDANT:    Christian Delgado-Lopez
CASE NUMBER:   6:18CR10095 - 001

# SPECIAL CONDITIONS OF SUPERVISION

1.    You must participate as directed in a cognitive behavioral program and follow the rules and regulations of that program which may include MRT, as approved by the United States Probation and Pretrial Services Office. You must contribute toward the cost, to the extent you are financially able to do so, as directed by the U.S. Probation Officer.

2.    You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

3.    You must successfully participate in and successfully complete an approved program for substance abuse, which may include urine, breath, or sweat patch testing, and/or outpatient treatment, and share in the costs, based on the ability to pay, as directed by the Probation Office. You must abstain from the use and possession of alcohol and other intoxicants during the term of supervision.

AO 245B      (Rev. 02/18 - D/KS 02/18) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page **6** of **7**

DEFENDANT:      Christian Delgado-Lopez
CASE NUMBER:   6:18CR10095 - 001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **Totals:** | $100 | Not applicable | Waived | Not Applicable |

☐      The determination of restitution is deferred until ___. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐      The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss**** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **Totals:** | $ | $ | |

☐      Restitution amount ordered pursuant to plea agreement $___.

☐      The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐      The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the ☐ fine and/or ☐ restitution.

☐ the interest requirement for the ☐ fine and/or ☐ restitution is modified as follows:

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
**Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:      Christian Delgado-Lopez
CASE NUMBER:   6:18CR10095 - 001

# SCHEDULE OF PAYMENTS

Criminal monetary penalties are due immediately. Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows, but this schedule in no way abrogates or modifies the government's ability to use any lawful means at any time to satisfy any remaining criminal monetary penalty balance, even if the defendant is in full compliance with the payment schedule:

A  ☐  Lump sum payment of $___ due immediately, balance due
         ☐ not later than ___, or
         ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B  ☒  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C  ☐  Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ___ years to commence ___ days after the date of this judgment; or

D  ☐  Payment of not less than 10% of the funds deposited each month into the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of ____ years, to commence ___ days after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:

If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 204, 401 N. Market, Wichita, Kansas 67202.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount and corresponding payee, if appropriate.

| **Case Number**<br>**Defendant and Co-Defendant Names**<br>**(including defendant number)** | **Total Amount** | **Joint and Several**<br>**Amount** | **Corresponding Payee,**<br>**if appropriate** |
| --- | --- | --- | --- |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States.  Payments against any money judgment ordered as part of a forfeiture order should be made payable to the United States of America, c/o United States Attorney, Attn: Asset Forfeiture Unit, 1200 Epic Center, 301 N. Main, Wichita, Kansas 67202.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

| | | |
|---|---|---|
| 10:09:33 | 1 | us -- would get him another minus two, right, in offense |
| 10:09:36 | 2 | level?  Am I doing this right so far? |
| 10:09:38 | 3 | MS. HASE:  (Nods head.)  Yes, Your Honor. |
| 10:09:42 | 4 | THE COURT:  That would get him down to 30, and |
| 10:09:43 | 5 | then he gets three points additional reduction for |
| 10:09:48 | 6 | acceptance of responsibility, and that would put him at a |
| 10:09:51 | 7 | 27 instead of the 33, as presently calculated. |
| 10:09:56 | 8 | Did I walk through that correctly? |
| 10:09:58 | 9 | MS. HASE:  (Nods head.) |
| 10:09:59 | 10 | MS. BARNETT:  Yes, Your Honor.  Thank you. |
| 10:10:00 | 11 | MR. FREUND:  Yes, Your Honor. |
| 10:10:01 | 12 | THE COURT:  And that's a big deal because the |
| 10:10:05 | 13 | guideline range for criminal history category I, level |
| 10:10:15 | 14 | 33, is 135 to 168 months.  If we drop it to an offense |
| 10:10:21 | 15 | level 27, his guideline range goes from -- becomes 70 to |
| 10:10:26 | 16 | 87.  And since you've all agreed that he gets the |
| 10:10:36 | 17 | statutory safety valve, that would remove the statutory |
| 10:10:43 | 18 | minimum of ten years that's applicable here. |
| 10:10:47 | 19 | Is that how all this seems to fit together, as far |
| 10:10:52 | 20 | as you all are concerned? |
| 10:10:54 | 21 | MR. FREUND:  Yes, Your Honor. |
| 10:10:55 | 22 | MS. BARNETT:  Yes, Your Honor. |
| 10:10:56 | 23 | THE COURT:  All right.  And I've read all your |
| 10:11:28 | 24 | briefing on this.  And I'm just not going to find that |
| 10:11:35 | 25 | the adjustment is appropriate.  And I've said a lot of |

**JOHANNA L. WILKINSON, CSR, CRR, RMR**
U.S. District Court, 401 N. Market, Wichita, KS 67202
(316) 315-4334
Attachment B

30

10:11:38  1   the reasons already, that all I have to go on is his

10:11:42  2   testimony.  This is a fellow who at first denied his

10:11:46  3   involvement, declined to do a controlled delivery to help

10:11:57  4   substantiate his assertion.  And I'm not clear on this.

10:12:04  5   Tell me this.  In his proffer, has he offered up any

10:12:10  6   information other than identifying this fellow -- I don't

10:12:18  7   know if you say it Jaime, Jamie [pronouncing], how they

10:12:21  8   pronounce it -- the fellow that contacted him at the disc

10:12:26  9   jockey job and sort of got the ball rolling on his

10:12:30  10  involvement in these shipments?

10:12:33  11       MS. BARNETT:  No, Your Honor.

10:12:34  12       THE COURT:  Okay.  He's made four runs that we

10:12:42  13  know of.  This notion that he's paid a thousand dollars

10:12:47  14  almost defies logic because the net profit to him from

10:12:54  15  this endeavor is no more than 50 to a hundred dollars

10:12:59  16  more than he could have made carrying on legitimate work

10:13:03  17  in his hometown.  He wouldn't have had to make the trip.

10:13:07  18  He wouldn't have had to face jail time.

10:13:14  19       And, you know, I think, you know, this is just

10:13:19  20  sort of an additional thought on this is, you know,

10:13:27  21  people who -- defendants who want to obtain these sorts

10:13:34  22  of adjustments in their role, I think, sometimes they do

10:13:39  23  step out and they take the risk of assisting with

10:13:45  24  controlled deliveries or providing other information.

10:13:50  25  Even if I assume he has no other information, it doesn't

| | | |
|---|---|---|
| 10:13:58 | 1 | seem to me that he ought to get the same kind of break as |
| 10:14:03 | 2 | those who do put themselves at some risk by assisting law |
| 10:14:09 | 3 | enforcement with a controlled delivery or some other |
| 10:14:11 | 4 | means to show that, "Yeah, I'm sorry, I didn't want to |
| 10:14:16 | 5 | get into this," or "I did but I wish I hadn't and I'm |
| 10:14:20 | 6 | willing to do something to help try to make it right." |
| 10:14:24 | 7 | So -- and you, Mr. Delgado-Lopez, were entrusted |
| 10:14:33 | 8 | with an extraordinary amount of this drug, 5 kilograms |
| 10:14:40 | 9 | that we've tested.  We know you had 13 kilograms of |
| 10:14:43 | 10 | something.  That strikes me as a large quantity of |
| 10:14:48 | 11 | methamphetamine. |
| 10:14:49 | 12 | Do we have any sense of what the street value of |
| 10:14:53 | 13 | that quantity of drugs would be? |
| 10:14:55 | 14 | (Whereupon, a sotto voce discussion was had |
| 10:14:55 | 15 | between Ms. Barnett and Trooper Carr.) |
| 10:14:57 | 16 | THE COURT:  The 5 or the 13?  Seems like a lot of |
| 10:15:02 | 17 | money. |
| 10:15:02 | 18 | MS. BARNETT:  TFO Carr just mentioned that roughly |
| 10:15:05 | 19 | we're talking a hundred dollars a gram, and so I guess |
| 10:15:09 | 20 | I'm not -- as the Court knows, I'm not good at math, but |
| 10:15:12 | 21 | it would be significant. |
| 10:15:13 | 22 | MR. FREUND:  Your Honor, I think there's multiple |
| 10:15:16 | 23 | different valuations for this quantity of drugs.  It |
| 10:15:19 | 24 | could be what does it sell for on the street level or |
| 10:15:21 | 25 | what is it on the wholesale level when it's delivered to |

| | | |
|---|---|---|
| 10:15:24 | 1 | the recipient in the destination city. |
| 10:15:28 | 2 | THE COURT:  Okay.  Well, I know it's a lot.  And |
| 10:15:34 | 3 | that indicates to me a measure of trust that the |
| 10:15:39 | 4 | organization has likely placed in this defendant.  I |
| 10:15:45 | 5 | don't know why they trust him, but multiple trips with -- |
| 10:15:52 | 6 | I don't know how much he was hauling in previous loads, |
| 10:15:54 | 7 | but by the time he got to this load they had entrusted |
| 10:15:58 | 8 | him with a significant quantity.  For all those reasons, |
| 10:16:03 | 9 | I am overruling the objection.  I'm not going to grant |
| 10:16:10 | 10 | the minor participant adjustment. |
| 10:16:19 | 11 | Which leads me to make the following findings.  I |
| 10:16:25 | 12 | find that there's a total offense level here of 33, |
| 10:16:31 | 13 | criminal history category I, which provides the |
| 10:16:38 | 14 | following.  Well, I guess do I need to make a formal |
| 10:16:42 | 15 | ruling on the safety valve, 3553, before I get to the |
| 10:16:47 | 16 | statutory constraints on sentencing? |
| 10:16:51 | 17 | MR. FREUND:  No, Your Honor, because 3553(f) only |
| 10:16:55 | 18 | authorizes you to sentence pursuant to the guidelines. |
| 10:16:58 | 19 | So if Christian does not get the minimal or the minor |
| 10:17:01 | 20 | role reduction, there's the ten-year mandatory minimum in |
| 10:17:04 | 21 | play here.  Safety valve, under the guidelines, gets him |
| 10:17:09 | 22 | two levels. |
| 10:17:10 | 23 | THE COURT:  Right. |
| 10:17:11 | 24 | MR. FREUND:  And allows the Court to otherwise |
| 10:17:13 | 25 | sentence Christian under the guidelines.  So if that |